IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                             No. CR 24-1262 JB

SONNY HANNAH,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Report, filed December 6, 2024 (Doc. 42)("Objections"). Sentencing in this matter will take place on January 23, 2024. See Order Granting Unopposed Motion to Vacate and Continue Sentencing Hearing at 1, filed November 29, 2024 (Doc. 40). The primary issue is whether the United States Probation Office's Presentence Investigation Report, filed November 15, 2024 (Doc. 35)("PSR"), incorrectly applies a 5-level enhancement under U.S.S.G. § 2A2.2(b)(2)(A) for discharging a firearm in connection with Count 2, Assault with a Dangerous Weapon, pursuant to 18 U.S.C. §§ 113(a)(3). Having reviewed carefully the parties' arguments, relevant law, and applicable facts, the Court concludes that the PSR incorrectly applies a 5-level enhancement under § 2A2.2(b)(2)(A). The Court thus sustains in part the Defendant's Objections.

## FACTUAL BACKGROUND

Defendant Sonny Hannah objects only to some facts in paragraphs 17, 19, 22, and 98 of the PSR. See Objections at 1. The Court thus adopts all other facts in the PSR as findings of fact. See Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact."). During the latter half of December, 2023, Jane Doe 1 and her three children stay with Hannah at his residence. See PSR ¶ 19, at 6; id. ¶ 23, at 7.

Towards the end of December, Hannah asks Doe 1 and her children to leave his residence. See PSR ¶ 19, at 6. On December 30, 2023, Doe 1 and her children attend a funeral for a family member. See PSR ¶ 19, at 6. After the funeral, Doe 1 and her children return to Hannah's residence to collect their belongings from Doe 1's vehicle, which is parked in Hannah's backyard. See PSR ¶ 19, at 6; id. ¶ 23, at 7. When Doe 1 and her children arrive at Hannah's residence, they notice that someone may have broken into the vehicle. See PSR ¶ 19, at 6; id. ¶ 23, at 7; Plea Agreement ¶ 7, at 5, filed September 9, 2024 (Doc. 32)("Plea Agreement"). Doe 1 then confronts Hannah about the apparent break-in. See PSR ¶ 19, at 6; id. ¶ 23, at 7. During the confrontation, he "aimed [his] rifle above [Jane Doe' 1's] head and shot off two rounds, just as a warning, to get her to leave." PSR ¶ 23, at 7. Instead of scaring Doe 1 away, Hannah's two shots strike and kill Doe 1 in front of her three children. See PSR ¶ 19, at 6; id. ¶ 23, at 7; Plea Agreement ¶ 7, at 5. "[I]t was unreasonable to shoot in Jane Doe [1's] direction, and . . . [Hannah] did so without due caution and circumspection." Plea Agreement ¶ 7, at 5. After killing Doe 1, Hannah points his firearm at Jane Doe 2 -- Doe 1's twelve-year-old daughter -- and gestures at her to leave the premises. See PSR ¶ 19, at 6; id. ¶ 23, at 8. "This act gave Jane Doe 2 the reasonable fear that [Hannah] intended to do bodily harm to her with the weapon in [his] hands." Plea Agreement ¶ 7, at 5. Although one of Doe 1's children -- her eight-year-old son -- says that Hannah shot at Jane Doe 2 after killing Jane Doe 1, no other witness recalls Hannah firing a third shot, and authorities recovered only two shell casings from the scene. See PSR ¶ 16, at 6; id. ¶ 21, at 7.

**PROCEDURAL BACKGROUND**

On September 9, 2024, Hannah pleads guilty to two crimes: (i) Count 1, Involuntary Manslaughter, pursuant to 18 U.S.C. §§ 1112; and (ii) Count 2, Assault with a Dangerous Weapon, pursuant to 18 U.S.C. §§ 113(a)(3), Assault with a Dangerous Weapon. See Plea Agreement ¶ 3,

at 2.  On November 15, 2024, the USPO files the PSR that applies a 5-level enhancement under U.S.S.G. § 2A2.2(b)(2)(A) for discharging a firearm in connection with Count 2.  See PSR ¶ 38, at 9.  On November 26, 2024, the United States files a sentencing memorandum that "highlight[s] an admittedly tricky issue regarding the firearm-discharge adjustment . . . applied to Count 2."  United States' Sentencing Memorandum at 5, filed November 26, 2024 (Doc. 38)("Sentencing Memo.").  The United States admits that, "[v]iewed in its totality, available evidence suggests Defendant fired only at Jane Doe 1."  Sentencing Memo. at 5.  The United States argues, however, that the firearm-discharge enhancement applies, because Hannah pointed his gun at Jane Doe 2 shortly after killing Jane Doe 1.  See Sentencing Memo. at 6-7.  To support this position, the United States cites to United States v. Murray, 82 F.3d 361 (10th Cir. 1996), where the United States Court of Appeals for the Tenth Circuit applies a § 2A2.2(b)(2)(A) enhancement to a defendant who "assaulted his ex-wife in her home with a gun, and then later fired that gun at her as she fled her home to run to a neighbor's home."  Sentencing Memo. at 6 (citing United States v. Murray, 82 F.3d 361, 362 (10th Cir. 1996)).

On December 6, 2024, Hannah files his Objections.  See Objections at 9.  Hannah objects to: (i) "certain factual language in paragraphs 17, 19, 22, and 38"; and (ii) PSR ¶ 38, at 9, where the USPO applies the § 2A2.2(b)(2)(A) firearm-discharge enhancement.  Objections at 1.  Hannah's objections to some facts in paragraphs 17, 19, 22, and 38 relate to: (i) whether Hannah found out that someone had slashed his tires before he killed Jane Doe 1; and (ii) whether Hannah ran or chased Jane Doe 1's children after he killed their mother.  See Objections at 6-8.  Because these factual objections do not impact the Court's analysis of whether the § 2A2.2(b)(2)(A) firearm discharge enhancement applies, the Court will address the factual objections at the January 23, 2024, sentencing hearing.  Hannah argues that the firearm-discharge enhancement applies only

if Hannah discharges a firearm: (i) during his assault of Jane Doe 2; (ii) in preparation of that assault; or (iii) in the course of attempting to avoid detection or responsibility for the assault. See Objections at 5 (citing U.S.S.G. § 1B1.3(a)(1)(A)).  Hannah maintains that "none of these circumstances occurred," because, instead, Hannah "discharged the firearm in connection with the involuntary manslaughter of Jane Doe 1, which occurred prior to the assault of Jane Doe 2." Objections at 5.  Hannah asserts that he does not discharge his firearm during, in preparation of, or in the course of avoiding detection or responsibility for his assault of Jane Doe 2, which "involved Mr. Hannah motioning for Jane Doe 2 to leave, with the firearm still in his arms, leading her to fear that Mr. Hannah might shoot her as well." Objections at 5.  Hannah also distinguishes United States v. Murray:

> In that case, the Tenth Circuit affirmed the 5-level enhancement where the defendant assaulted his wife, beating her repeatedly with a rifle, 6 and then shot at her as she fled her home, in an effort to stop her from fleeing. Id. at 363.  Although the defendant argued that the shots were fired "after" the assault for which he was convicted and thus no enhancement applied, the court agreed with the enhancement because, "Had Mr. Murray succeeded in his attempt to stop Mrs. Murray, he could have continued his attack and delayed or avoided detection.  See U.S.S.G. § 1B1.3(a)(1)." Id.  That is, the shots fired at the defendant's fleeing wife were deemed relevant conduct to the offense of conviction for assault of the wife, the same victim.  In Mr. Hannah's case, we are instead dealing with two separate victims -- Jane Doe 1 and Jane Doe 2 -- with shots fired against Jane Doe 1 prior to the assault of Jane Doe 2 and not in relation to the assault of Jane Doe 2 in any of the three ways required for relevant conduct under U.S.S.G. § 1B1.3(a)(1)(A).

Objections at 5-6.  Hannah requests that the Court use a 3-level enhancement under § 2A2.2(b)(2)(C), which applies when a defendant brandishes or threatens to use a firearm in connection with the convicted offense. See U.S.S.G. § 2A2.2(b)(2)(C).

On December 13, 2024, the United States responds to the Objections.  See United States' Response to Defendant's Objection to Presentence Report at 1, filed December 13, 2024 (Doc. 43)("Objections Response").  The United States agrees with Hannah's that, under U.S.S.G. §

1B1.3(a)(1)(A), the firearm-discharge enhancement applies only if Hannah discharges his firearm during, in preparation of, or while attempting to avoid detection or responsibility for his assault of Jane Doe 2.  See Objections Response at 3.  The United States admits that Hannah does not discharge his firearm during, or while attempting to avoid detection or responsibility for his assault of Jane Doe 2.  See Objections Response at 3.  The United States insists, however, that Hannah "arguably" discharges his firearm in preparation for his assault of Jane Doe 2:

> Defendant repeatedly claimed he felt threatened and feared for his life when Jane Doe 1 and her three children came onto his property.  [PSR ¶¶ 17, 22, 23, at 6-8.]  Defendant thus shot and killed Jane Doe 1 and thereafter motioned towards Jane Doe 2 in an effort to vanquish all of them from his property.  If this Court believes Defendant's ultimate goal was to clear Jane Doe 1 and her children from his land, then Defendant's shooting of Doe 1 was the first step in making sure the children also fled the scene.  Under these circumstances, the five-level adjustment is warranted.

Objections Response at 2 (brackets added).

## **LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT**

Before the Court imposes a sentence, the USPO "must conduct a presentence investigation and submit a report to the court . . . ." Fed. R. Crim. P. 32(c)(1).  A presentence report must apply the advisory sentencing Guideline, meaning that it must:

(A)   identify all applicable guidelines and policy statements of the Sentencing Commission;

(B)   calculate the defendant's offense level and criminal history category;

(C)   state the resulting sentencing range and kinds of sentences available;

(D)   identify any factor relevant to:

   (i)   the appropriate kind of sentence, or

   (ii)   the appropriate sentence within the applicable sentencing range; and

(E)   identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1). A presentence report also must provide additional information, including:

    (A)    the defendant's history and characteristics, including:

        (i)    any prior criminal record;

        (ii)    the defendant's financial condition; and

        (iii)    any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

    (B)    information that assesses any financial, social, psychological, and medical impact on any victim;

    (C)    when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

    (D)    when the law provides for restitution, information sufficient for a restitution order;

    (E)    if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and recommendation;

    (F)    a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

    (G)    any other information that the court requires, including information relevant to the factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report. See Fed. R. Crim. P. 32(f). Parties must make their objections in writing within fourteen days of receiving the PSR. See Fed. R. Crim. P. 32(f)(1). Parties may object to many aspects of the PSR, "including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). For example, a party can object to a PSR's statement of facts. See, e.g., United States v. Garcia, No. CR 20-1370 KWR,

2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a defendant's objections that a PSR misstates material facts regarding the posted speed limit and the circumstances surrounding the victim's injuries). If a party raises a factual objection, the party must present "information to cast doubt on" the PSR's recitation of the facts. United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994). A party also can object that the USPO miscalculates a defendant's criminal history category. See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history score by several points). Similarly, a party can object that a PSR impermissibly applies a base-offense-level enhancement, see, e.g., United States v. Casias-Grove, No. 22-0109 JB, 2022 WL 17830249 (D.N.M. December 21, 2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base-offense-level); that the PSR should have applied an additional base-offense-level enhancement, see, e.g., United States v. Talk, No. CR 19-1994 JB, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the PSR should have applied a 4-level enhancement to the defendant's base offense level); or that the PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609 JB, CR 19-3611 JB, 2022 WL 16924000 (D.N.M. November 13, 2022)(Browning, J.)(sustaining the parties' objections that the PSR should have applied a 2-level reduction to the defendant's base offense level).

    Ideally, the parties and the USPO can work through objections without the Court's assistance. Rule 32(f)(3) establishes: "After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate." Fed. R. Civ. P. 32(f)(3). In keeping with rule

32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently.  If the parties and the USPO cannot work out an objection, then the parties may file an objection with the Court.  If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them."  Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  When resolving factual objections, the court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence.  See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008).  Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the court must determine whether the United States has met its burden of showing that a particular enhancement applies by a preponderance of the evidence.[1]  See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.).  The Court may base its conclusion "on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentenc[ing] hearing."  United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

---

[1]There is some nuance regarding the applicable burden of proof required for sentencing enhancements, which the Court discusses in greater detail in the next section.

**LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES**

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court of the United States reaffirms the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment <u>within the range</u> prescribed by statute." 530 U.S. at 481 (emphasis in original). The Supreme Court cautions, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Apprendi v. New Jersey</u>, 530 U.S. at 490. In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court elaborates on its holding in <u>Apprendi v. New Jersey</u>, stating that the "'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>." <u>Blakely v. Washington</u>, 542 U.S. at 303 (emphasis in original)(quoting <u>Ring v. Arizona</u>, 536 U.S. 584, 602 (2002); <u>Harris v. United States</u>, 536 U.S. 545, 563 (2002)(plurality opinion), <u>overruled by</u> <u>Alleyne v. United States</u>, 570 U.S. 99 (2012)). In <u>United States v. Booker</u>, however, the Supreme Court holds that, because the sentencing guideline ranges are no longer mandatory, "<u>Apprendi</u> does not apply to the present advisory-Guidelines regime." <u>United States v. Ray</u>, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing <u>United States v. Booker</u>, 543 U.S. at 259). See <u>United States v. Booker</u>, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of <u>Apprendi</u>'s requirement." (quoting <u>United States</u>

v. Booker, 543 U.S. at 221)(United States v. Booker adds second alteration)).  More recently, the Supreme Court holds that the Apprendi v. New Jersey requirements apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit holds that Blakely v. Washington and United States v. Booker do not change the district court's enhancement-findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involves plain-error review of a drug sentence in which a jury finds the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributes to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on the testimony of the United States' witnesses about the various amounts that they had sold to the defendant -- attributes 1,200 grams of methamphetamine to the defendant and uses that amount to calculate his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increase the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's 50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount.  See United States v. Magallanez, 408 F.3d at 682-83.  On appeal, the Tenth Circuit states that, both before and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict." United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker makes the Guidelines ranges "effectively advisory," United States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirms that "district courts are still required to consider Guideline ranges, which are

determined through application of the preponderance standard, just as they were before," United States v. Magallanez, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105(10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2]  "[T]he application of an enhancement . . . does not implicate

---

[2]Although the Tenth Circuit states in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since characterized its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not found yet that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is necessary to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement does not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitles the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributes, even though its findings increase the defendant's sentence from twenty years to consecutive forty-year terms).  Subsequent to United States v. Washington, the Tenth Circuit reiterates the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence.  This issue has been foreclosed in this Circuit."  United States v. Robertson, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increases his or her sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after Alleyne v. United States, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[3] The Court notes:

> [A]lthough the decision of the Supreme Court of the United States in Alleyne v. United States . . . expands the rule from Apprendi v. New Jersey, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory

---

[3]United States v. Hendrickson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(unpublished). The Court concludes that United States v. Hendrickson has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. See [United States v. Sangiovanni, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. August 29, 2014)(Browning, J.)].

United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1315 (brackets added).  The Supreme Court has clarified that "[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed penalty.' . . . And under our Constitution, when 'a finding of fact alters the legally prescribed punishment so as to aggravate it,' that finding must be made by a jury of the defendant's peers beyond a reasonable doubt."  United States v. Haymond, 588 U.S. 634, 645 (2019)(quoting Alleyne v. United States, 570 U.S. at 112-14).  Further, the Tenth Circuit has determined that a district court could use its own finding on drug quantity to enhance a defendant's Guidelines range consistent with Alleyne v. United States, "so long as the court does not use its own drug quantity finding to alter the defendant's statutory sentencing range."  United States v. Cassius, 777 F.3d 1093, 1094 (10th Cir. 2015)(emphasis in original).

## **ANALYSIS**

The Court sustains Hannah's Objections and concludes that the 5-level § 2A2.2(b)(2)(A) enhancement does not apply, because the United States has not shown, by a preponderance of evidence, that Hannah discharged his firearm during, in preparation of, or while attempting to avoid detection or responsibility for his assault of Jane Doe 2.  The Court does not adopt as a finding of fact the United States' suggestion that Hannah shot Jane Doe 1 to remove Jane Doe 2 from his property, and that thus Hannah discharged his firearm in preparation for his assault of Jane Doe 2.  See Objections Response at 2.  Instead, the Court concludes that the preponderance of the evidence shows that Hannah shot Jane Doe 1 to scare away Jane Doe 1, and not to scare away her children.  See PSR ¶ 23, at 7 (Hannah)("I aimed my rifle above [Jane Doe 1's] head and

shot off two rounds, just as a warning, to get her to leave."). These circumstances are distinct from those in United States v. Murray, where the defendant discharged his firearm at the victim of the assault to stop her from escaping. See 82 F.3d 361 at 362. The United States agrees that Hannah never shot at Jane Doe 2. See Sentencing Memo. at 5. Accordingly, the Court concludes that the United States has not shown, by a preponderance of the evidence, that Hannah discharged his firearm in preparation of his assault of Jane Doe 2. Thus, the Court sustains Hannah's Objections and declines to apply the 5-level firearm-discharge enhancement under § 2A2.2(b)(2)(A). The Court also agrees with Hannah that a 3-level § 2A2.2(b)(2)(C) applies, because Hannah brandished or threatened to use his firearm during his assault of Jane Doe 2. See Plea Agreement ¶ 7, at 5 (Hannah)("Right after I shot Jane Doe 1, and while I still had the gun in my hands, I physically motioned towards Jane Doe 1's children to leave. This act gave Jane Doe 2 the reasonable fear that I intended to do bodily harm to her with the weapon.").

**IT IS ORDERED** that: (i) the Defendant's Objections to Presentence Report, filed December 6, 2024 (Doc. 42), are sustained in part; (ii) the 5-level U.S.S.G. § 2A2.2(b)(2)(A) enhancement does not apply; (iii) the 3-level U.S.S.G. § 2A2.2(b)(2)(C) enhancement applies; (iv) the adjusted offense level for Count 2 is 17; (iv) the combined adjusted offense level is 20; (v) the total offense level is 17; (vi) applicable criminal history category is I; and (iii) the United States Sentencing Guidelines establish an imprisonment range of 24-30 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex M. M. Uballez
  United States Attorney
Stephen R. Kotz
Zachary Clark Jones
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Rachel Nathanson Jacobs
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorneys for the Defendant*